## SUPREME COURT.

In the matter of the *habeas corpus* for JOHN FITTON.

If there is any proceeding in the law which it is the duty of the courts to pre-
serve and protect in its full power, it is the writ of *habeas corpus ;* and when-
ever an attempt is made to violate or evade the provisions of the statute on
this subject, the court should see that such attempt shall not succeed.

An officer of the Metropolitan police of the city of New-York, had in charge a
prisoner on a writ of *habeas corpus*, and the officer made return to the writ that
he had no opposition to the discharge, and had no further return to make there-
on, whereupon the prisoner was discharged ; and before leaving the court-room,
without any warrant or process, the officer again arrested the prisoner, and
carried him back to the same prison.

On an order for the officer to show cause why he should not be punished for con-
tempt, he answered that he acted in pursuance of instructions and the order of
one of the police commissioners, and supposed it was his duty as policeman, to
obey the orders of such commissioner. And it appeared that the commissioner
at the same time was attorney and counsel for a party complainant, who de-
sired the re-arrest of the prisoner, on a charge of larceny.

*Held*, that the re-arrest was entirely unwarranted, and the propriety of such an
order to the officer by the police commissioner, under the circumstances could
not be conceded. But the circumstances in which the officer was placed by
the positive instructions of his superior officer, led to the conclusion that he
acted in obedience to such orders, and in ignorance of the consequences of his
act, and was sufficient to relieve him from punishment.

*New-York Special Term, July*, 1858.

JOSEPH KEEFE was cited to show cause why he should not
be punished for contempt in arresting Fitton after he was dis-
charged on the return of the writ of *habeas corpus*.

W. P. JAMES, *attorney for Fitton*.

INGRAHAM, Justice.—Keefe made return to the writ, that
he had no opposition to the discharge, and had no further re-
turn to make thereon, whereupon the prisoner was discharged,
and before leaving the court-room, without any warrant or
process, Keefe again arrested the prisoner, and carried him
back to the same prison. If such a proceeding could be toler-

ated, the writ of *habeas corpus* would be of no avail, for as often as a man was declared to be illegally imprisoned, he could be arrested on another charge, and carried back to prison. If Keefe had any authority to make the arrest, he should have made it, and returned such authority as the cause of detention.

He had no authority to make the arrest, and from his affida-vit which he has now filed in excuse of the act, he states that he acted in pursuance of instructions from General Nye, not to oppose the discharge, but as soon as he was discharged to arrest him on a charge of grand larceny. He also states, that he thought it was his duty as a policeman, to obey the orders of General Nye, and denies any intentional disobedience of the order of the court.

The affidavit of General Nye is also submitted by Mr. Keefe. In that affidavit General Nye states he is the attorney of Ches-ter Moses, residing in Onondaga county, who was in partner-ship with the brother of the prisoner; that such brother ab-sconded from that place and came to New-York; that it was ascertained that while here, he was closeted with the prisoner for two days; that after the brother had sailed for Europe, the prisoner went to Onondaga for his brother's family, where he was arrested. The prisoner was afterwards transferred to the custody of the sheriff of this city, and at the request of General Nye, was brought to his room, and there examined by him. In the course of the examination, the prisoner admitted the receipt of moneys from his brother, for which money General Nye obtained from him an order and on that order received the money. After the service of the writ of *habeas corpus*, General Nye appears to have had interviews with the attorney of the prisoner, and conversations took place between them as to the imprisonment of the prisoner and the money received from him. General Nye then instructed the officer to take the man to court, consent to his discharge, and to re-arrest him on a charge of larceny, and that he would appear and make com-plaint against him, and adds that he did not intend to have such re-arrest made in court.

The circumstances in which Keefe was placed by the posi-

In the matter of John Fitton.

tive instructions of his superior officer, are such as to lead me to the conclusion that he acted in obedience to such orders, and in ignorance of the consequences of his act. And I am therefore disposed on this occasion to suffer that act to pass without imposing the punishment which otherwise the conduct of the officer would deserve.

The subsequent arrest was entirely unwarranted. Fitton had been in prison for some time, and when the writ was allowed, was confined in the charge of Keefe, under the control of the deputy superintendent of the police, and of course of the police commissioners. The order as given by General Nye, *who at the same time was acting as attorney and counsel of Moses, the complainant*, was sufficient to excuse Keefe, although the propriety of such an order under the facts as stated by him, cannot be conceded. If the commissioners had any charge against the prisoner, it was but due to the proper administration of justice, and due to the prisoner, that such charge should have been returned to the court in answer to the writ, and if the cause was sufficient, the prisoner would have been remanded to the custody of the officer.

If there is any proceeding in the law which it is the duty of the courts to preserve and protect in its full power, it is the writ of *habeas corpus*, and whenever an attempt is made to violate or evade the provisions of the statute on this subject, the court should see that such attempts shall not succeed.

In this case, as Keefe has satisfied me that he acted under orders of a superior officer, and intended no disobedience of the orders of the court, I deem it unnecessary to make any further order in the matter.

The order to show cause is discharged.